[Civ. No. 13859.   Second Dist., Div. Three.   Dec. 10, 1943.]

DORA PULVERMACHER, Appellant, v. LOS ANGELES CO-ORDINATING COMMITTEE FOR AID TO JEW-ISH REFUGEES, et al., Respondents.

A. Brigham Rose for Appellant.

Loeb & Loeb, Hardy & Horwin and Leon B. Brown for Respondents.

WOOD (Parker), J.—Plaintiff appeals from a judgment of dismissal which was based upon an order sustaining defendants' demurrer to plaintiff's amended complaint without leave to amend. She also appeals from the order of dismissal "whereby the court sustained the demurrer."

The amended complaint alleged in substance as follows: that defendant, Los Angeles Co-ordinating Committee for Aid to Jewish Refugees was an unincorporated association; that "some short interval prior to the month of June, 1938," plaintiff ascertained that "said Committee's personnel, particularly Freeda Mohr and Louis Booth, had assertedly misappropriated the funds" of the said committee; that this knowledge on the part of plaintiff came to the attention of defendants; that defendants thereupon, contriving to suppress disclosures of these matters by plaintiff, "maliciously, wantonly and without legal process or color thereof, and not in the due course of law, and in wanton and reckless disregard of plaintiff's liberty and constitutional rights," and "acting

under the misrepresentation that plaintiff was being taken to a hospital to rest, proceeded to get the plaintiff, in this surreptitious manner, into a sanitarium," where she was "locked in," and "kept against her wishes and remonstrations" for sixteen days and was caused to suffer "a complete nervous breakdown from shock and humiliation"; that after she had procured her release from said "so-called sanitarium," she caused an investigation to be made respecting the "conduct of the defendants, which had provoked their endeavoring to imprison plaintiff without prior legal process," and ascertained that defendants had charged plaintiff with the receipt of moneys which she had not received; that said "investigation continued up to the month of October, 1939, at which occasion plaintiff was in the process of initiating an investigation into the acts of the defendants respecting this falsified record setting forth that plaintiff had received moneys which in fact she had not received, when the defendants, contriving to bring about a quashal of her investigation and to render her efforts to expose the same fruitless, again caused the plaintiff to be incarcerated as an alleged insane person, and in order to bring about and accomplish this purpose, defendants, on the 2nd day of November, 1939, caused the plaintiff to be forcibly and illegally arrested and conveyed against her will to the psychopathic ward of the Los Angeles County Hospital; that this latter arrest was procured in the following manner": that one Greenschpoon, allegedly a physician, appeared in behalf of the other defendants before a judge of the superior court on November 2, 1939, "on an ex parte application," which falsely alleged that plaintiff was mentally incompetent, notwithstanding that said Greenschpoon had never treated plaintiff or examined her, and upon this false petition the said judge issued a warrant for the apprehension of plaintiff, and she was arrested on said falsely procured process by a police officer and placed in the psychopathic ward of the Los Angeles County Hospital on November 2, 1939, and there imprisoned until a hearing in the superior court was had on November 10, 1939, "at which hearing a finding was had that plaintiff herein was perfectly sane, whereupon she procured her release"; that plaintiff "submits that she was not insane at any time, and that the arrest and imprisonment of the plaintiff, as herein alleged, was caused and secured by the defendants for the reason heretofore alleged, and for no other reason, namely, for the fraudulent purpose of attempting to suppress an exposé of the defalcations of some of the defendants, as hereinbefore alleged, and that the

defendants for these purposes, and for no other reason, caused it to be charged that plaintiff was insane, with the intent of making it appear that plaintiff was suffering from delusive beliefs in respect to the matters hereinbefore alleged''; that ''the arrests and imprisonment of plaintiff, in the manner aforementioned, were had and made in each instance by the defendants without proper or ordinary care, and without due examination or inquiry or bona fide mental or physical examination with a view to ascertaining whether plaintiff was in fact a sane or insane person, and that the acts on the part of the defendants were a direct and deliberate violation of their duties and obligations to the plaintiff; that these acts were a gross and culpable wrong and a false imprisonment for which defendants are liable to her in damages''; and that plaintiff was damaged in the sum of $15,000, and was entitled to exemplary damages in the sum of $30,000.

Respondents (defendants) assert that the amended complaint is defective in that it does not show a want of probable cause. As above shown, the amended complaint stated that the arrest and imprisonment of the plaintiff were caused by defendants for the reasons alleged in the amended complaint, and ''for no other reason, namely, for the fraudulent purpose of attempting to suppress an exposé of the defalcations of some of the defendants as hereinbefore alleged, and that the defendants for these purposes, and for no other reason, caused it to be charged that plaintiff was insane.'' The allegations of the amended complaint affirmatively limit the cause of the arrest and imprisonment to the one reason alleged, and emphatically exclude all other circumstances as causes or reasons for the arrest and imprisonment of plaintiff. Although the allegations do not include the precise words, ''that said acts were committed without probable cause,'' the allegations are equivalent to the usual allegation wherein the words, ''want of probable cause,'' or ''without probable cause,'' are used, and were allegations sufficient to negative the existence of any probable cause as justification for the acts of defendants in causing the arrest, imprisonment, and prosecution of plaintiff. In 34 Am.Jur., page 772, section 116, it was stated: ''It is not necessary to allege a want of probable cause in terms where there is a statement of facts necessarily showing it.'' For the purposes of the demurrer, the allegations of the amended complaint are deemed to be true. The facts alleged, being undisputed, present a

question of law as to whether the undisputed facts show a want of probable cause. (34 Am.Jur. p. 795, sec. 161.) In the malicious prosecution action of *Jaffe* v. *Stone* (1941), 18 Cal.2d 146 [114 P.2d 335, 135 A.L.R. 775], the complaint alleged that the criminal proceeding upon which the action was based had been dismissed, but it did not allege (as defendants contended it should have alleged) that it had been "finally" dismissed. The court said at page 159: "The complaint pleads the actual facts in a clear and understandable manner, alleging that the proceeding was 'dismissed.' 'Dismissal' was the fact; its finality is a matter of legal effect and involves a question of law." In the present case, it being true under the demurrer, that the one and only cause for the arrest, imprisonment, and prosecution of plaintiff was the cause shown by the facts alleged, the facts alleged necessarily show a want of probable cause. The general demurrer should not have been sustained upon the ground that the amended complaint did not show a want of probable cause, and there was no special demurrer upon that ground.

Respondents contend further that the amended complaint fails to allege that defendants are not within the classes of persons excepted from liability, by section 5047 of the Welfare and Institutions Code, in making a petition alleging that a person is mentally ill. Said section 5047 provides in part as follows: "When no relative, friend, or other person can be found in the county who is able and willing to make and file the petition herein provided, any peace officer, probation officer, physician attending the patient or physician attached to a public hospital or institution, if the person is a patient therein, may make and file the petition herein provided. When a petition is filed by any such person, neither the person making or filing the petition, nor his superiors, nor the department, hospital, or institution to which he is attached nor any of its employees, shall be rendered liable thereby either civilly or criminally." Respondents assert that such contention should not be disposed of by reference to the usual rule that a plaintiff is not required to anticipate defenses. They argue that public policy does not favor malicious prosecution actions in general; and that since a plaintiff is required to plead a want of probable cause in such actions, for the reason such actions are in disfavor, the plaintiff herein should be required to plead that defendants were not within the class of petitioners excepted from liability in said section 5047. As

to the statement that a malicious prosecution action is in disfavor, the court said in the recent case of *Jaffe* v. *Stone, supra,* 18 Cal.2d 146, at page 159: "It is finally urged in support of the judgment that malicious prosecution suits are not favored. The frequency with which this statement is made in these cases calls attention to the need of some explanation. Properly applied, it means that public policy is in favor of the apprehension and punishment of criminals, and limits the person complaining of criminal charges by placing upon him the burden of proving the basic elements of the tort. These elements, viewed on the other side, furnish full defenses to the public spirited accuser or prosecutor. But where the difficult burden of proof is met by the plaintiff, recovery is allowed. This being true, we should not be led so astray by the notion of a 'disfavored' action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority, or by adopting stricter requirements of pleading than are warranted by the general rules of pleading." Whether or not a defendant is a person within the class of petitioners excepted from liability, under said section, is not an element of plaintiff's substantial right, and is a matter of defense peculiarly within the knowledge of the defendant.

In *Jaffe* v. *Stone, supra,* 18 Cal.2d 146, the defendants contended also that the complaint in that malicious prosecution action did not state a cause of action for the reason it did not allege that a new criminal proceeding had not been commenced after the former criminal proceeding had been dismissed. The court said, at page 158: "But, like other defenses, this should be raised in the answer, not anticipated in the complaint. It would not involve a positive averment of fact, an element of plaintiff's cause of action; plaintiff would be simply negativing an exception to, or a qualification upon, these elements of his cause of action; he would have to single out that particular exception among others that might be raised as defenses. But the salutary rule of pleading frowns upon averments negativing or anticipating defenses, and requires that such matters be left to the answer. [Citing cases.] Accordingly we are satisfied that such an allegation cannot be deemed an essential element of the cause of action." In order to comply with the pleading requirement, for which respondents contend, that a plaintiff

should negative the nonliability of the defendant under said section 5047, it would be necessary for a plaintiff to allege the nonexistence of the several exceptions, qualifications, and different combinations of circumstances, provided in said section as conditions creating nonliability of petitioners. Allegations negating such exceptions would include: that the petitioner was not a peace officer, or a probation officer, or a physician who attended plaintiff, or a physician attached to a hospital or institution in which plaintiff was a patient. If the petitioner was such an officer or physician as those described in said section, plaintiff would be required, in order to negate the nonliability of such officer or physician, to make an allegation, contrary to plaintiff's contention that he, himself, was not insane, that there was a relative or friend or other person who could have been found in the county who was able and willing to make and file a verified petition that plaintiff was an insane person. Such an allegation would tend to indicate that there was probable cause, and would be in conflict to some extent with plaintiff's other allegation that there was no probable cause. To require a plaintiff to negative the exceptions under said section 5047 would greatly increase the present difficult burden upon a plaintiff by requiring him to allege facts peculiarly within the knowledge of defendant, and would be an unreasonable limitation on plaintiff's substantive right. The provisions of said section 5047 are exceptions to, or qualifications upon, the elements of a cause of action, and are defenses to be plead by defendant, and plaintiff was not required to anticip such defenses and negative them in the complaint.

The contention of respondents, that the alleged ca of action based upon the alleged false imprisonment at "s short interval prior to the month of June, 1938" was ba by the statute of limitations, is sustained. The comp was filed October 3, 1940. In his argument before the counsel for plaintiff stated that he did not allege the ir of 1938 as a cause of action but as a part of the the circumstances concerning the arrest of plaintiff vember 2, 1939.

Defendants' general demurrer to the original co was overruled, and their special demurrer thereto wa tained with leave to amend. The amended complaint incl the same allegations, in substance, as those which wer the complaint, and in addition thereto included allegat

concerning further details as to the manner in which the second arrest, referred to in the complaint, was procured.

■ Although the trial court overruled a general demurrer to the complaint, it was not precluded thereby (as appellant suggests it was) from making a contrary ruling on the general demurrer to the amended complaint which, as above stated, included the allegations of the complaint. (*Kelly* v. *Liddicoat* (1939), 35 Cal.App.2d 559 [96 P.2d 186].)

■ However, the general demurrer to the complaint having been overruled, the plaintiff would have been justified in this case in assuming that she would be given leave to amend if the court sustained the general demurrer to the amended complaint. If the demurrer to the amended complaint was sustained on the ground that said complaint did not allege ''there was no probable cause,'' then plaintiff should have been given leave to amend inasmuch as it appears that such an amendment could have been made. ■ After the demurrer was sustained without leave to amend, it was not necessary that plaintiff request permission in the trial court for leave to amend. (Code Civ. Proc., sec. 472c; *Wennerholm* v. *Stanford Univ. Sch. of Med.* (1942), 20 Cal.2d 713, 719 [128 P.2d 522, 141 A.L.R. 1358].)

Respondents have taken exception in this court to the transcript on appeal on the ground that it does not contain a copy of the judgment roll. They referred particularly to the omission of a copy of the judgment, and objected to a consideration of the appeal unless such defect was remedied. After such objection was made, the court granted appellant's motion to augment the record on appeal by including a copy of the judgment in the transcript, and a copy of said judgment has been filed herein.

■ It appears that the appeal from the order of dismissal ''whereby the court sustained the demurrer'' is an appeal from the order sustaining the demurrer. An order sustaining a demurrer is not an appealable order. (*Ross* v. *O'Brien* (1934), 1 Cal.App.2d 496, 498 [36 P.2d 1108].)

The appeal from the order of dismissal ''whereby the court sustained the demurrer'' is dismissed. The judgment of dismissal is reversed.

Shinn, Acting P. J., and Shaw, J. pro tem., concurred.